**UNITED STATES of America,
Plaintiff,**

v.

**Darwin P. MOORE, Bruce
Knutson, Defendants.**

Nos. 07–CR–0025–C–01,
07–CR–0025–C–02.

United States District Court,
W.D. Wisconsin.

Aug. 29, 2007.

Michael Lieberman, Federal Defender Services, Madison, WI, for Defendants.

## OPINION AND ORDER

BARBARA B. CRABB, District Judge.

Defendant Bruce Knutson won a $10,000 prize in the Tax Times Blues Giveaway sponsored by the Ho–Chunk Nation's gaming casino in Baraboo, Wisconsin, but his apparent good luck was short-lived. He and codefendant Darwin P. Moore were accused of taking steps to win the giveaway by submitting thousands of counterfeit entry forms made out in their names. They were charged by a grand jury in a two-count indictment with conspiring to abstract, purloin and take and carry away with intent to steal money belonging to a gaming casino operated by an Indian Tribe, and with actually doing so, in violation of 18 U.S.C. §§ 371 and 1167(b).

Before trial, the government moved for and was granted leave to dismiss count 2 of the indictment alleging the substantive offense. Defendants moved to dismiss the remaining count, arguing that it failed to allege a crime because the acts described in the indictment were not criminal as a matter of law. Defendants pointed out that the contest rules contained no express prohibition on making one's own entry forms and submitting them. Accordingly, defendants argued, they did nothing more than increase their chances of winning and this, they say, is not a crime. In a separate argument, defendants asserted that the court had no jurisdiction over the charges because it did not suffer the requisite statutory loss; it would have given the money away in any event. Thus, in defendants' view, the true victim was not the casino, but the person who would have won the prize had it not been for defendants' actions.

In a report and recommendation, the magistrate judge concluded that a jury could find that the conduct alleged in the indictment was an agreement by defendants to steal prize money from the casino. Such a finding would follow, he held, if at trial the jurors believed that the only permissible method by which to obtain entries for the $10,000 prizes was by following the directions for registration, which provided entrants one free entry when they registered for the promotion and additional entries for "every 50 points earned or one hour of Blackjack played."

As for defendants' jurisdictional argument, the magistrate judge found no merit to the contention that the casino could not be a victim because it had intended to give the $10,000 away in any event. "Common sense dictates that funds intended by their owner for an identifiable class of recipients (even if the specific recipient is unknown) remain the property of the owner until a qualified recipient receives them." R&R, dkt. # 26, at 9. The magistrate judge recommended denial of the motion to dismiss; the recommendation was accepted and the motion to dismiss the indictment was denied.

Defendants chose to waive their rights to a jury and went to trial before the court on June 18, 2007. From the evidence adduced at that trial, I find the following material facts.

## FACTS

In the spring of 2005, Valerie Lyons was the manager of promotions and player development at the Ho–Chunk Nation's casino in Baraboo, Wisconsin and responsible for the writing of the Tax Time Blues Giveaway rules, which read as follows:

REGISTRATION FOR SLOT PLAYERS

You must register at the Players Registration/Guest Service Booth. You will receive one FREE entry upon registration. Once registered, slot players will earn entry [sic] for every 50 points earned or one hour of Blackjack played.

The casino promised prizes totaling $50,000, with $10,000 to be given out on April 14, once each hour, starting at 6 p.m. and ending at 10 p.m. To win a prize, players had to be present at the casino at the time of the drawing.

To enter the contest, a participant had to register at the Guest Services Counter and show a Ho–Chunk Players Club Card that the casino used to keep track of points and "comps." (The meaning of this term was never explained.). The earned entry forms were handed out personally by a Guest Services representative or a blackjack employee. Although employees were not supposed to give out entry forms except in accordance with the promotion rules, it is possible that some gave out additional entry forms to some customers.

The casino posted the promotion rules throughout the casino on several stanchions holding 22 inch × 28 inch signs and on a table near the Guest Services counter. In addition, the casino management distributed copies of the standard operating procedures for the contest to Ho–Chunk employees and discussed them in regular meetings. Each authentic form had a watermark in the background in an effort to foil unauthorized duplication.

In March and April 2005, defendants Darwin Moore and Bruce Knutson were living together in Menasha, Wisconsin. From December 2004 until April 1, 2005, Grace Hewitt had lived with Moore in his apartment. Defendant Knutson moved in with them at the end of February 2005. In March, the three roommates learned of the Tax Times Blues Giveaway and hatched a plan to win one or more of the prizes. To that end, they obtained a legitimate entry form from the casino, bought bright orange paper to match the casino forms and, using Moore's copy machine, made thousands of copies of the legitimate form. They filled in thousands of the forms with the name of one or the other of the two defendants.

Sometime in March, Hewitt realized that her romantic feelings for Moore were not reciprocated and she moved out of the apartment. Angry at Moore and desiring revenge, she called the Ho–Chunk casino and advised it of defendants' plan. Then she broke into Moore's apartment, retrieved money she had left behind and took copies of the fraudulent entry forms along with the CopyMax receipt for the paper. She mailed the copies and receipt to the casino.

The casino's surveillance investigator, Steven Anderson, received a tip about defendants on April 6, 2005 (presumably from Hewitt). Two days later he received the documents, which included a work order for four reams of bright orange paper and several entry forms, some of which were filled in with the name of one of the defendants and some of which were blank. On April 9, he was able to identify defendants at the casino and videotape their trips to the promotional barrel to deposit entry forms. He videotaped them again on April 10 and on April 14. On April 14, he also taped two women he believed to be accomplices of defendants, who were later identified as Barbara Hombs, defendant Knutson's twin sister, and her daughter-in-law, Kristina Hombs. Knutson had invited them to the casino to play the slot machines at his expense. After they arrived, defendant Knutson asked them to put some of the entry forms in the barrel. They agreed to do so, not knowing that the forms were counterfeit. Each took repeated trips, taking turns and playing the slot machines in the intervals until they ran out of money and went home.

Anderson's videotapes show defendants and their accomplices making multiple trips to the larger of two promotion barrels at the casino depositing stacks of en-

try forms. Despite Anderson's and Lyons's knowledge of defendants' actions, the casino proceeded with the drawing as planned. Lyons never told defendant Knutson that she knew he had photocopied forms, never disqualified him from the drawing and never took any action to insure that he or defendant Moore would not win the drawing. In fact, defendant Knutson won the 6 p.m. drawing. After his winning form was announced, he undertook the obligatory tasks of a contest winner: posing for pictures and completing a publicity release, a prize claim form and 1099 tax form. Lyons signed off on Knutson's papers and paid him the $10,000 prize, half in cash and half in a check that he later cashed. Defendant Knutson never told Lyons that he had put counterfeit entry forms into the barrel or asked whether it was permissible to do so or whether it was covered by the rules. Neither he nor defendant Moore won any of the other prizes given out that evening.

After the drawing, Anderson took custody of the entries. After sorting them, he identified 4,710 entries containing Knutson's name and 4,645 containing defendant Moore's name. At some time, Lyons reviewed defendants' Players Club Cards and determined that both defendants were registered to play in the contest and both had earned some entry forms by their play. Defendant Knutson had earned 6; defendant Moore had earned 17. The total number of entries for the giveaway was about 15,000.

Lyons admitted she could not stop people from picking up discarded entry forms off the floor and using them. She believes it would have been illegal for a casino visitor to give away his or her earned entry forms to someone else who would be present at the casino at the time of the drawing.

At no time did either defendant try to conceal his appearance or try to avoid the surveillance camera. However, the tapes show defendants standing at counters in the casino, filling out entry forms and taking these forms openly to the promotional barrel, and then reaching surreptitiously into their jackets and removing large stacks of forms that they added to the barrel.

When defendants were interviewed by Special Agent Loreen Glaman of the Wisconsin Department of Justice, they told her they had entered a "couple hundred" forms several different times. They said that they had obtained the majority of the forms from people on tour buses and had either found the rest at the casino or had earned them. When asked whether they had created any of the forms themselves, they said they had not. They told Glaman they had not submitted any forms that were photocopies and maintained that the rules did not preclude transferring the entry forms.

During all relevant times, the Ho–Chunk casino was situated in the Western District of Wisconsin on land owned by the United States in trust for the Wisconsin Winnebago tribe now known as the Ho–Chunk Nation. The Ho–Chunk Nation was an Indian tribe recognized by the federal government; it owned and operated the casino, which offered Class III gaming activities and was doing so pursuant to a tribal gaming ordinance. The casino was approved by the National Indian Gaming Commission and in conformance with the tribe's Tribal State Gaming Compact with the state of Wisconsin approved by the Department of Interior, Secretary of Indian Affairs.

OPINION

Defendants have abandoned their jurisdictional challenge based on their claim that the casino was not the actual victim, so this case turns on one issue only:

whether defendants' conspiracy was intended to achieve a particular illegal end, made criminal under 18 U.S.C. § 1167(b): abstracting, purloining or taking and carrying away with intent to steal funds belonging to an Indian casino. "Abstracting" and "purloining" are not everyday words any more, even to lawyers. (Black's Law Dictionary does not even contain a definition for purloin.). According to the second edition of Webster's New International Dictionary, purloin means "appropriate wrongfully; to steal," while abstract means "to take secretly or dishonestly; to purloin." Black's defines abstract as "to take or withdraw from" or "to remove or separate." I will use the phrase "Taking and carrying away with the intent to steal" because it is a readily comprehensible concept that conveys the prohibition on stealing that is the nub of the statute.

■ Defendants maintain that they did none of the statutorily prohibited acts when they carried out their scheme. They did not intend to steal from the casino when they submitted thousands of counterfeit forms because they did not do anything the promotion rules prohibited. Moreover, they add, they did not disguise their identities or use false names, addresses or birth dates on the entry forms.

Whatever surface appeal there may be to defendants' argument, it disappears under closer scrutiny. The casino offered prizes to persons who did certain things: registered at the Guest Services counter, played blackjack for an hour and earned 50 points on the slot machines. Period. When casino patrons did any one of these things, they would receive an entry form from a casino employee. The casino did not say that patrons could not enter the contest in any other way, such as by taking another guest's entry forms surreptitiously or making counterfeit copies of the entry forms, but it did not need to. However clumsily the rules were phrased, they were clear about what the requirements were for obtaining entry forms.

Defendants seem to be arguing that the casino had some obligation to state explicitly the *impermissible* means of winning the prizes if it wanted to make the rules restrictive. That argument is unpersuasive. If an entity says "I will give you or pay you money if you do something," whether that something is specified as being a day's work or an agreement to paint a portrait or shop in the entity's store, the entity has a right to expect that anyone claiming the money will have performed the agreed upon act. If the person lies about having done it or takes credit without permission for the work of another, he is trying to take away the money of another under false pretenses. The taking can be unlawful even if the entity does not state expressly that it will not pay if the claimant has not done the work or has misappropriated credit for it.

It may be that the casino would have accepted an entry form that a patron had picked up off the floor or had been given by another patron who did not want to come back to the casino for the drawing. As a practical matter, it would have no way of checking the source of an authentic entry form. It may be also that casino employees sometimes gave out entry forms to particular customers who did not qualify for the forms. Even if the casino tolerated these unspecified means of obtaining entries, it does not follow that it was thereby bound to accept counterfeited forms as winning entries. Not only was the contest not set up to detect the improper acquisition of authentic entry forms, it had no incentive to prevent such acquisitions. Improperly acquired authentic entry forms would still have been earned initially by a person present at the casino and gambling, whereas defendants' counterfeit entry forms required no visits or gambling. De-

fendants' forms contravened the whole purpose of the giveaway, which was to promote attendance and gambling at the casino, not just to make people feel better at tax time.

One way to read defendants' argument is as a challenge based on lack of fair warning. The law will not hold someone guilty for doing something he could not have known was illegal. A due process challenge based on a lack of fair warning requires a close look at what the law forbids to insure that the particular acts charged are ones that the actor would or should have realized would violate the statute. In this case that means determining whether a person reading the rules for the Tax Times Blues Giveaway would understand that he was prohibited from submitting fraudulent entry forms with the goal of winning a prize at a casino and that doing so would be a form of stealing the prize money from the casino in violation of §§ 371 and 1167(b). For the reasons explained above, I am persuaded that a person reading the rules would understand the prohibition and would understand that winning with the help of counterfeited entry forms would amount to stealing. That the defendants were merely giving themselves an edge in winning the contest rather than taking the $10,000 from the safe at the casino does not change the conclusion. Submitting more than 9000 entries in a contest that has a total of 15,000 entries is a substantial edge.

Defendants' own conduct supports the view that the only reasonable interpretation of the rules is that they do not permit the submission of fake entries. One can infer from their actions that they knew their actions were illegal. Why else would they have taken care to make their entry forms look exactly like the casino's own forms, filled out a few forms at the casino to make it appear that their walks to the barrel were for legitimate purposes or been so furtive about dropping their stacks of counterfeit entries into the barrels? Why else would they have engaged accomplices to help stuff the barrels and not have told the accomplices what they were doing? Why else would they have thought themselves safe in telling Agent Glaman that they received the entry forms from other visitors to the casino or picked up discards at the casino but refused to admit they had made their own copies?

In counterfeiting and submitting the entry forms, defendants were acting with the intent to deprive the Ho–Chunk nation of the rights and benefits of ownership of its funds, which included its right to award its funds as prizes to persons who complied with the rules of its promotion. Any question about their intent is answered by defendants' surreptitious conduct in submitting their counterfeit forms and their denial of copying when they spoke with Agent Glaman.

Defendants spent some time at trial establishing that the casino could have stopped them from winning a prize had it wanted to. Presumably, they elicited this information in an effort to show that the casino did not view their actions as criminal rather than as a basis for arguing that defendants should not be found guilty when the casino failed to take reasonable efforts to prevent them from carrying their scheme through to completion. Obviously, the casino had no obligation to save defendants from the consequences of their actions. *See generally* 1 Wayne R. LaFave, *Substantive Criminal Law*, § 6.5 at 504 (2d ed.2003) ("a criminal offense is a wrong affecting the general public, at least indirectly, and consequently cannot be licensed by the individual directly harmed"). Moreover, once defendants had reached agreement on their scheme and committed an overt act, such as purchasing the copy paper, the crime was complete. The only

way they could have avoided conviction was to terminate the scheme.

I find beyond a reasonable doubt that defendants reached an agreement to acquire an actual Tax Times Blues Giveaway entry form, bought copy paper in the same color as the form, made more than 9000 copies of the form on defendant Moore's photocopier, filled in the forms with their names and placed the completed entries in the promotion barrel at the Ho–Chunk casino in Baraboo on or before April 14, 2005. I am persuaded beyond a reasonable doubt that in reaching this agreement and taking the described steps to carry out their scheme, defendants were acting with the agreed upon goal of taking and carrying away the casino's money with intent to steal it and that they are guilty of violating 18 U.S.C. § 371 and 1167(b).

### ORDER

IT IS ORDERED that defendants Darwin P. Moore and Bruce Knutson are GUILTY of count 1 of the indictment returned against them on March 7, 2007.